[Cite as *Michaels v. Saunders*, 2015-Ohio-3172.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

KYLE MICHAELS

    Appellant

    v.

ASHLEY SAUNDERS

    Appellee

C.A. No.     14CA010604

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    13JG39766

DECISION AND JOURNAL ENTRY

Dated: August 10, 2015

HENSAL, Presiding Judge.

{¶1}    Plaintiff-Appellant, Kyle M. ("Father") appeals from the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2}    Father and Defendant-Appellee, Ashley S. ("Mother"), never married, but had two children together: K.L., born in July 2010, and A.L., born in July 2012. Father obtained legal custody of K.L. before A.L. was born. In August 2013, he sought custody of A.L. by way of a complaint for the allocation of the parties' parental rights and responsibilities. The trial court held a custody hearing and ultimately awarded custody of A.L. to Mother. The court awarded Father standard visitation and ordered him to pay $280.32 per month in child support.

{¶3}    Father now appeals from the trial court's judgment and raises two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN NAMING THE DEFENDANT THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE PARTIES' MINOR CHILD[.]

{¶4}    In his first assignment of error, Father argues that the trial court erred by awarding Mother legal custody of A.L.  We disagree.

{¶5}    In determining the best interest of a child for purposes of allocating parental rights and responsibilities, a court must consider the factors listed in Revised Code Section 3109.04(F)(1). *Patton v. Hickling-Patton*, 9th Dist. Medina No. 13CA0071-M, 2014-Ohio-2862, ¶ 8.  Those factors include: (1) the wishes of the child's parents; (2) the wishes of the child, if the court interviews the child; (3) the child's interaction and interrelationship with her parents, siblings, and anyone else who may significantly affect her best interest; (4) the child's adjustment to her home, school, and community; (5) the mental and physical health of all persons involved; (6) the parent more likely to honor and facilitate court-approved parenting time rights; (7) whether either parent has failed to make child support payments; (8) whether either parent or any household member previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; (9) whether one of the parents has continuously and willfully denied the other's right to parenting time; and (10) whether either parent has established a residence, or is planning to establish a residence, outside Ohio.  R.C. 3109.04(F)(1)(a)-(j).  "[A]bsent an argument that the trial court reached an incorrect factual determination on one or more of the best interest prongs, this Court will review a trial court's best interest analysis under an abuse of discretion standard of review."  *Walsh-Stewart v. Stewart*, 9th Dist. Wayne No. 12CA0031, 2012-Ohio-5927, ¶ 20.

"As such, this Court only may reverse the custody determination of the trial court if we conclude that the court's decision was 'unreasonable, arbitrary or unconscionable.'" *Id.* at ¶ 21, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶6} Father testified that he and Mother had a tumultuous relationship, due in large part to Mother's short temper. He testified that he had to call the police several times in 2010 and 2012 because Mother had either damaged his property or had acted erratically towards him. He indicated that he was concerned about A.L. remaining with Mother because Mother was mentally unstable and stopped caring for their children every time she got upset with him. According to Father, Mother told him that she was receiving treatment for a mental breakdown and threatened to suffocate their son on one occasion when she became angry. Nevertheless, he admitted that he frequently allowed Mother to care for their son, K.L. Although Father had custody of K.L., K.L. and A.L. spent most of their time together at either Father's or Mother's residence. Father claimed that he frequently allowed Mother to care for both children because it would only be for a few days at a time, and "she's not going to get aggravated within those two days." According to Father, he would only be concerned with Mother watching the children for extended periods of time.

{¶7} Father's 13-year old cousin, his aunt, and a former neighbor of his and Mother's testified on his behalf. The neighbor testified that she saw Mother smoking marijuana while pregnant and always heard her yelling and the children crying. Father's cousin and aunt testified that Mother frequently screamed at the children and either kicked or threw objects when she became angry. Both testified that Mother sometimes neglected the children, but that Father kept his composure and made sure the children were well cared for. Even so, both admitted that they had not had the opportunity to observe Mother with the children for several months.

Additionally, none of the three who testified for Father had the opportunity to observe him with A.L. for any extended period of time.

{¶8} Mother's sister and her paternal grandmother testified on her behalf. Both described Mother as a good mother who provided A.L. with a structured environment. They testified that Mother kept A.L. on a strict eating and sleeping schedule and never screamed or threw things. Both noted that Mother's relationship with Father caused her stress, but stated that Mother handled the stress in a healthy fashion. Additionally, they both described how much A.L. and K.L. enjoyed spending time with their cousins on Mother's side. Mother's sister, in particular, testified that she and her two young children visited Mother at least once a week so that all the children could play together.

{¶9} Mother denied that she ever screamed at her children or acted out physically when she became angry. She described herself as very patient with her children and testified that she did her best to teach them things like colors, shapes, and words. Mother testified that she kept the children on a strict eating and sleeping schedule and that she encouraged them to have a relationship with their cousins because all of the children enjoyed each other's company. Mother confirmed that she routinely took A.L. to the doctor and that she was up to date on all of her immunizations. Additionally, Mother stated that she was in good mental health and denied ever having suffered from a breakdown. Mother testified that she and Father had an understanding that their children should be together as much as possible, regardless of who had custody.

{¶10} Father argues that the trial court erred in its custody determination because it was not in A.L.'s best interest to remain with Mother. He argues that the court failed to give proper weight to the harm A.L. would suffer if separated from her brother and placed "with an unstable mother." He argues that there was a significant amount of testimony regarding Mother's temper

and tendency to act out physically when angered. He also argues that, in analyzing whether he or Mother would be more likely to honor court's orders, the court failed to take note of one occasion on which he had to call the police because Mother refused to return K.L. to him.

{¶11} Father's brief does not contain any citations to the record regarding the incident on which Mother allegedly kept K.L. from him, and the record contains sparse reference to such an incident. *See* App.R. 16(A)(7). The record contains no testimony from Father regarding the foregoing incident. The only mention of it occurred during the cross-examination of Mother's sister, and she denied that Mother had refused to return K.L. to Father. Accordingly, we find no merit in Father's argument that the trial court erred by not taking the incident into consideration when analyzing which parent would be more likely to facilitate court-ordered visitation.

{¶12} The trial court outlined all of the best interest factors in its judgment entry and, after considering all the evidence, determined that Mother should be awarded custody of A.L. Having reviewed the record, we cannot conclude that the court abused its discretion in its custody determination. Both Mother and Father wanted to be named A.L.'s legal custodian, and, at the time of the hearing, A.L. was too young to express her wishes or concerns to the court. *See* R.C. 3109.04(F)(1)(a)-(b). There was evidence, however, that A.L. had lived with Mother since birth, was bonded with her, and enjoyed spending time with Mother's family, including her cousins. *See* R.C. 3109.04(F)(1)(c), (d). Additionally, there was evidence that A.L. was well cared for and that Mother had provided her with balanced meals, scheduled naps and bedtimes, and proper medical care. Although Father had custody of K.L., the record reflects that the parties generally allowed the children to be together and were capable of working with one another to facilitate that voluntary arrangement. While Father claimed that Mother was mentally unstable, he frequently allowed their son to stay with her, and Mother testified that she was in

good mental health.  To the extent there was conflicting testimony about Mother's anger issues, the trial court was in the best position to view the witnesses and weigh their respective testimony.  *See Helms v. Helms*, 9th Dist. Wayne No. 97CA0008, 1998 WL 150361, *2 (Apr. 1, 1998).

**{¶13}**  Father has not shown that the trial court's decision to award Mother custody of A.L. was arbitrary, unreasonable, or unconscionable.  As such, his argument that the court erred in its custody determination lacks merit.  His first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN CALCULATING CHILD SUPPORT IN THIS MATTER.

**{¶14}**  In his second assignment of error, Father argues that the trial court erred in its child support calculation.  Specifically, he argues that the court failed to afford him a deduction for the parties' son, K.L., on line 8 of the child support worksheet.  He further argues that the court erred by not imputing additional income to Mother when calculating her annual income.

**{¶15}**  Generally, "child support is calculated using the worksheet provided in R.C. 3119.022 with reference to the basic child support schedule set forth in R.C. 3119.021." *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 5.  "There is a rebuttable presumption that the amount calculated pursuant to the child support schedule and applicable worksheet is the correct amount due."  *Brown v. Allala*, 9th Dist. Summit No. 26689, 2013-Ohio-3507, ¶ 9. When the issue on appeal is whether the trial court correctly applied the child support statute, this Court employs a de novo standard of review.  *See, e.g., Dietrich v. Dietrich*, 9th Dist. Summit No. 26919, 2014-Ohio-4782, ¶ 10.  Conversely, "[t]he amount of potential income the court imputes [if] it finds voluntary unemployment * * * is a discretionary determination that this

Court will not disturb on appeal absent an abuse of discretion." *Patton*, 2014-Ohio-2862, at ¶ 13.

{¶16} Line 8 of the child support worksheet allows for an adjustment of the parties' incomes "for minor children born to * * * *either parent and another parent* who are living with this parent * * *." (Emphasis added.) R.C. 3119.022. "R.C. 3119.05(C) further explains this deduction * * *." *Brown v. Brown*, 9th Dist. Wayne No. 02CA0030, 2003-Ohio-239, ¶ 12. That subsection provides that,

> [i]f other minor children who were born to the parent *and a person other than the other parent who is involved in the immediate child support determination* live with the parent, the court * * * shall deduct an amount from that parent's gross income that equals the number of such minor children times the federal income tax exemption for such children less child support received for them for the year, not exceeding the federal income tax exemption.

(Emphasis added.) R.C. 3119.05(C). Thus, "Line 8 of the child support calculation worksheet is used to deduct the federal exemption from the parent's annual income for other minor children born to this parent and another person." (Emphasis omitted.) *Brown* at ¶ 14.

{¶17} Father argues that, because he has custody of K.L., the court erred when it did not afford him a deduction for K.L. on Line 8 of the child support worksheet.[1] Yet, K.L. is the son of Father and Mother, not Father and another person. Because Line 8 of the worksheet only allows for a deduction when the child at issue is one born "to the parent and a person other than

---

[1] We note that Father has not argued that he and Mother have split parental rights such that the court erred by not using the worksheet contained in R.C. 3119.023. In fact, Father's brief relies upon the sole/shared parenting worksheet contained in R.C. 3119.022. Moreover, the record is devoid of any judgment issuing from Cuyahoga County with respect to K.L. As such, there is no evidence regarding the ultimate resolution of that case with respect to the issue of child support.

the other parent who is involved in the immediate child support determination," it did not apply in this instance. R.C. 3119.05(C). Consequently, Father has not shown that the court erred by not affording him a deduction on Line 8 of the worksheet.

**{¶18}** Next, Father argues that the court erred when it imputed income to Mother in the amount of $16,536 per year. He argues that the court should have imputed additional income to her because she admitted that she had earned $9 per hour at her last job.

**{¶19}** Mother testified that she held a job for five to six months before A.L. was born and that her job paid $9 per hour. She also testified, however, that she had not worked since A.L. was born. Mother stated that she currently had two job offers, but did not indicate what either of those two positions paid. There also was no testimony about her qualifications or level of education.

**{¶20}** As previously noted, the amount of income a trial court imputes to a voluntarily unemployed parent is a matter of discretion for the court. *See Patton*, 2014-Ohio-2862, at ¶ 13. The trial court determined that Mother was capable of earning minimum wage employment and imputed that amount to her. Father failed to set forth any evidence tending to show that Mother currently had an offer for a higher paying job, that there were higher paying jobs available in the area, or that Mother possessed any specific qualifications or job skills. *See* R.C. 3119.01(C)(11). The fact that Mother once held a job that paid her slightly more than minimum wage is not enough to show that the court abused its discretion in its determination. As such, Father's second assignment of error is overruled.

III.

**{¶21}** Father's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

——

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
CONCURS.

SCHAFER, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶22} I concur with the lead opinion's resolution of the first assignment of error. However, I respectfully dissent from its handling of the second assignment of error. Father and Mother have split parental rights and responsibilities, which required that the trial court use the

child support guideline worksheet contained in R.C. 3119.023. Since the trial court incorrectly used the guideline worksheet for a sole parenting situation, it erred in its calculation of child support. Accordingly, I would sustain the second assignment of error, reverse the trial court's child support order, and remand this matter for further proceedings.

{¶23} R.C. 3119.023 relevantly provides that "[w]hen a court * * * calculates the amount of child support to be paid pursuant to a child support order in a proceeding in which the parents have split parental rights and responsibilities with respect to the children who are the subject of the child support order, the court * * * *shall* use [the worksheet contained in the statute]." (Emphasis added.) Split parental rights and responsibilities is defined as "a situation in which there is more than one child who is the subject of an allocation of parental rights and responsibilities and each parent is the residential parent and legal custodian of at least one of these children." R.C. 3119.01(14). Father has legal custody of K.L. Mother has legal custody of A.L. Clearly, the allocation of custody in this matter presents a situation of split parental rights and responsibilities and the trial court was required to use the guideline worksheet in R.C. 3119.023. The use of the split parenting guideline worksheet, as opposed to the worksheet for sole parenting situations, would have a critical impact in this matter since it provides for an offset of Father's support obligation for A.L. against Mother's support obligation for K.L. R.C. 3119.07(B).

{¶24} I recognize that Father did not explicitly challenge the use of the sole parenting guideline worksheet in his briefing on the second assignment of error. However, he did specifically challenge the trial court's computation of child support, and the trial court's error in using the wrong worksheet constitutes plain error. Remedying such an obvious defect, as opposed to ignoring it, is consistent with this Court's special role in child support matters. R.C.

Chapter 3119 is "aimed at providing uniform, consistent and fair support obligations to protect Ohio's children from insufficient and inequitable child support orders. It is the [courts'] duty * * * to adhere to the dictates of the General Assembly and to strictly comply with the provisions of the statute." *Marker v. Grimm*, 65 Ohio St.3d 139, 143 (1992). Accordingly, we have a "watchdog" role in support cases, *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 540 (1997), and the only appropriate way to fill this role is to raise issues in trial courts' computation of child support that are plainly unsupported under R.C. Chapter 3119.

{¶25} Moreover, I do not believe that the lead opinion properly applies R.C. 3119.05(C) in this matter. The statute provides that "[i]f other minor children who were born to the parent and a person other than the other parent who is involved in the immediate child support determination live with the parent, the court * * * shall deduct an amount from that parent's gross income that equals the number of such minor children times the federal income tax exemption for such children[.]" R.C. 3119.05(C). The statutory language mandates that courts give deductions for children who live with one of the parents to the case but do not belong to the other parent. This mandate, however, does not preclude trial courts from granting deductions for other children that do not fit squarely within the confines of the statute. *See State ex rel. Curtis v. De Corps*, 134 Ohio St. 295, 299-300 (1938) ("'[Expressio unius est exclusio alterius] properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that which is omitted must be intended to have opposite and contrary treatment.'"), quoting *Ford v. United States*, 273 U.S. 593, 611 (1927).

{¶26} This allowance of deductions for children not specifically mentioned in R.C. 3119.05(C) is demonstrated by our decision in *Brown*, which aptly shows how this statute is

intended to apply in child support cases.[2] There, the father wanted an exemption under R.C. 3119.05(C) on line 8 of the shared parenting guideline worksheet for the child that was implicated in the case. We quite correctly rejected the father's request because the statute is not meant to "provide any sort of adjustment concerning *the child to which the child support order pertains*." (Emphasis added.) *Brown v. Brown*, 9th Dist. Wayne No. 02CA0030, 2003-Ohio-239, ¶ 14. This result and application of R.C. 3119.05(C) are consistent with the intent of Ohio's domestic relations statutes – to properly account for the entire family unit between two parents and their children regardless of marital status. *See* R.C. 3103.031 ("A biological parent of a child, a man determined to be the natural father of a child * * *, a parent who adopts a minor child * * *, or a parent whose signed acknowledgment of paternity has become final * * * assumes the parental duty of support for that child."); R.C. 3109.03 ("When husband and wife are living separate and apart from each other, or are divorced, and the question as to the parental rights and responsibilities for the care of their children * * * is brought before a court of competent jurisdiction, they shall stand upon an equality as to the parental rights and responsibilities for the care of their children[.]"); *Haskins v. Bronzetti*, 64 Ohio St.3d 202, 205 (1992) ("Both common and statutory law in Ohio mandate that a parent provide sufficient support for his or her child. Indeed, the obligation of support follows the parent.").

{¶27} But, Father is not asking for an exemption on line 8 for the child to which this support order pertains. Rather, he is seeking an exemption for a different child. The split parental rights worksheet properly contemplates that both parents receive credit for the children

---

[2] It should be noted that the case law on the application of R.C. 3119.05(C) is quite sparse.

that are in their sole custody. Yet, as noted above, the trial court did not use this statutorily-mandated worksheet, improperly electing to use the sole parenting worksheet, which does not give credit to Father for his custody and care of K.L. Indeed, the interests of K.L., the parties' other child, are not reflected anywhere in the worksheet or the trial court's judgment. Such a result is contrary to the intent of the domestic relations statute.

{¶28} Consequently, I believe that the child support order should be reversed and the trial court should be instructed to properly give credit to Father for his responsibility over K.L. by either using the split parenting guideline worksheet or giving him a deduction for K.L. on line 8.[3] Since the lead opinion fails to provide such instruction, I respectfully dissent as to the resolution of the second assignment of error.

APPEARANCES:

JEFFERY S. BROWN, Attorney at Law, for Appellant.

ROBERT CABRERA, Attorney at Law, for Appellee.

---

[3] It is a complicating factor in this case that Father received custody of K.L. from a Cuyahoga County court. There is no indication in the record that a support order was issued for K.L. in Cuyahoga County. The multijurisdictional nature of this case may require the trial court to decide whether a transfer and consolidation of K.L.'s case from Cuyahoga County for the purpose of running the split parenting guideline worksheet is appropriate or whether it is more appropriate to give Father credit for K.L. by virtue of the deduction on Line 8.