[Cite as *Oberlin v. Oberlin*, 2011-Ohio-6245.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| JESSE R. OBERLIN | C.A. No. 25864 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ASHLEY M. OBERLIN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. 2006 11 3813 |

DECISION AND JOURNAL ENTRY

Dated: December 7, 2011

WHITMORE, Judge.

{¶1} Plaintiff-Appellant, Jesse Oberlin ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, adopting a magistrate's decision to grant Defendant-Appellee, Ashley Oberlin aka Ashley Riley's ("Mother"), motion for the reallocation of parental rights and responsibilities. This Court affirms.

I

{¶2} Father and Mother were married on January 29, 2004 and had one child during the marriage: M.O., born May 10, 2004. Mother left the marital residence in 2005 with M.O. and moved to California. M.O. remained with Mother until January 2006 when Father brought her to Ohio. Father filed for divorce on November 27, 2006, and the trial court issued a decree

of divorce on August 28, 2008. Father was named the residential parent and legal custodian of M.O., and Mother was ordered to pay child support.

{¶3} On December 4, 2008, Mother filed a motion for the reallocation of parental rights and responsibilities based on a change in circumstances. Father sought to hold Mother in contempt, citing her failure to pay her court ordered child support payments. A magistrate held a hearing on both matters on July 14, 2009. Thereafter, the magistrate entered a decision in which she found that a change of circumstances had occurred and that it was in M.O.'s best interest to reallocate parental rights and responsibilities to Mother. The magistrate also determined that Mother was in contempt because she had failed to pay child support. The trial court adopted the magistrate's decision the same day.

{¶4} Subsequently, Father filed objections to the magistrate's decision. The trial court overruled Father's objections, and Father appealed. This Court dismissed the appeal, however, as the trial court never independently entered judgment on the magistrate's decision. *Oberlin v. Oberlin* (Nov. 30, 2010), 9th Dist. No. 25667. The trial court then issued a judgment entry on March 15, 2011. The court found Mother in contempt for failing to pay child support, but also determined that a change in circumstances had occurred and it was in M.O.'s best interest to name Mother her residential parent and legal custodian.

{¶5} Father now appeals from the trial court's judgment and raises three assignments of error for our review. Because the assignments of error are interrelated, we consolidate them for purposes of our analysis.

II

Assignment of Error Number One

"THE TRIAL COURT ERRED IN FINDING THAT A CHANGE OF CIRCUMSTANCES OCCURRED WITH THE MINOR CHILD OR THE RESIDENTIAL PARENT."

Assignment of Error Number Two

"THE TRIAL COURT ERRED IN FINDING THAT IT WAS IN THE CHILD'S BEST INTEREST FOR THE CHILD TO BE PLACED IN MOTHER'S CUSTODY."

Assignment of Error Number Three

"THE TRIAL COURT ERRED IN CHANGING CUSTODY OF THE CHILD WHEN THE MOTHER WILLFULLY AND CONTINUOUSLY FAILED TO PAY HER CHILD SUPPORT."

{¶6}   In his assignments of error, Father argues that the trial court erred by granting Mother's motion for the reallocation of parental rights and responsibilities.  Specifically, he argues that the court erred by finding that a change in circumstances occurred and that a reallocation was in M.O.'s best interest.  We disagree.

{¶7}   This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. No. 24150, 2008-Ohio-5232, at ¶9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, at ¶18.  Trial courts have broad discretion in their allocation of parental rights and responsibilities. *Graves v. Graves*, 9th Dist. No. 3242-M, 2002-Ohio-3740, at ¶31, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74.  "[A] trial court's determination in custody matters 'should be accorded the utmost respect' because '[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" *Baxter v. Baxter*, 9th Dist. No. 10CA009927, 2011-Ohio-4034, at ¶6, quoting *Miller*, 37 Ohio

St.3d at 74. Accordingly, "[c]ustody determinations will not be reversed on appeal absent an abuse of discretion." *Baxter v. Baxter*, 9th Dist. No. 10CA009927, 2011-Ohio-4034, at ¶6. An abuse of discretion implies that "the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. If, however, a litigant challenges a particular factual finding of the trial court, this Court will review the trial court's factual conclusion for competent, credible evidence. *Maxwell v. Maxwell*, 9th Dist. No. 07CA0047, 2008-Ohio-1324, at ¶6. A determination of "whether a change in circumstances has occurred so as to warrant a change in custody" is one that must be reviewed under an abuse of discretion standard. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, paragraphs one and two of the syllabus.

> "[A] court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." R.C. 3109.04(E)(1)(a).

As such, "before a modification can be made pursuant to R.C. 3109.04(E)(1)(a), the trial court must make a threshold determination that a change in circumstances has occurred." *Buttolph v. Buttolph*, 9th Dist. No. 09CA0003, 2009-Ohio-6909, at ¶11. Moreover, the requisite change of circumstances "must be a change of substance, not a slight or inconsequential change." *Davis*, 77 Ohio St.3d at 418. The statute is intentionally designed to require a significant change in order "to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child a 'better' environment." Id., quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416.

{¶8} At the time of the parties' divorce, Father resided in Ohio and Mother resided in California. Mother left the marital residence in April 2005 and brought M.O. to California with her. M.O. primarily resided with Mother until January 2006, although Father had periods of visitation. In January 2006, Father brought M.O. to Ohio, where he lived with his parents. From that point on, M.O. primarily resided with Father and had limited periods of visitation with Mother.

{¶9} Father received an OVI in October 2006 and completed a three-day OVI program while his mother took care of M.O. Father's license was suspended for a six-month period as a result of the OVI, but he was able to obtain driving privileges for purposes of caring for M.O. Nancy Crawford, a Family Court Services Evaluator, prepared a report for the initial custody determination and ultimately recommended that Father be awarded custody. Yet, the trial court noted in the divorce decree that Crawford felt the case was "a close call."

{¶10} Unbeknownst to the trial court or Mother, Father was arrested for a second OVI on August 25, 2008, three days before the divorce decree issued. Father did not inform anyone that the arrest occurred. When Mother later became aware of the pending OVI charge, she filed her motion for reallocation. The trial court determined that Father's second OVI constituted a change in circumstances for purposes of R.C. 3109.04(E)(1)(a). Father argues that an OVI charge, by itself, cannot constitute a change in circumstances. He avers that M.O. was in no way affected by the charge and there is no evidence that the charge is a result of a larger alcohol problem.

{¶11} At the hearing on Mother's motion for reallocation, Crawford testified that she once again prepared a report and recommendation for the court. Crawford acknowledged that she recommended Father be awarded custody at the time of the divorce, but testified that her

initial report included a recommendation that Mother seek custody in the event that Father was charged with any further alcohol-related offenses. Crawford testified that, because Father already had one OVI at the time of her initial evaluation and Mother resided a considerable distance from M.O., she "had to put in some measure of assurances that this would not be a repeat episode, being indicative of the fact that maybe he wasn't being as responsible a parent as he needed to be to be the custodial parent." Crawford expressed her concern that a second OVI might be indicative of a "possible pattern" for Father and that Father's drinking might be a greater concern than she had initially believed it to be or that he was willing to admit. Crawford again stated that her recommendation was a "close decision," but concluded that custody should be reallocated to Mother in light of Father's second OVI.

{¶12} Mother testified that she discovered Father had been arrested for another OVI when M.O. told her over the phone that "Daddy got in trouble again and his car was taken." Father denied ever telling M.O. about his OVI. Father testified that M.O. was asleep at home with her grandparents when he was stopped for speeding and found to be intoxicated. Father acknowledged that he made a poor decision by choosing to drink and drive again after his first OVI, but insisted that it was not part of a bigger problem. He further indicated that he planned to serve the jail sentence associated with his OVI conviction when M.O. was visiting Mother, so that she would not be present at the time of his incarceration. Father admitted that he did not inform Mother or the court that he was arrested for a second OVI. Father testified that, while he would not have lied about the OVI arrest if directly questioned, he did not want to volunteer that information because he knew Mother would use it against him in the custody proceeding.

{¶13} The trial court determined that Father's second OVI in a two-year period, which occurred only three days before the divorce decree issued, constituted a change in circumstances.

Based on our review of the record, we cannot conclude that this decision amounted to an abuse of discretion. See *Davis*, 77 Ohio St.3d at paragraphs one and two of the syllabus. Although Father insisted that M.O. was unaware of his OVI, the trial court could have chosen to believe Mother's testimony that M.O. knew about it and told Mother, as it is unclear how Mother would have discovered that information otherwise while residing in California. The court also could have determined that M.O. was negatively affected by the information, as she told Mother that Father was "in trouble again." It is evident that Crawford, the Family Court Services Evaluator, struggled with her custody recommendations to the court as, both times, she described her decision as a "close" one. She indicated in her initial report that another alcohol-related charge would be a triggering event for Mother to seek a change in custody. Moreover, at the reallocation hearing she emphasized her concern that a second OVI was indicative of a larger problem. Although Father testified at the hearing that he did not have a problem with alcohol and would not drink and drive again, the trial court could have determined that Father's assertions were disingenuous, given that he purposely kept the fact of his arrest from Mother so that she could not seek custody on that basis. The court also could have believed that Father did have a problem with alcohol in light of the fact that he chose to leave his daughter at home and operate his vehicle in excess of the speed limit, while intoxicated, in the midst of a heated custody battle. See *Holcomb v. Holcomb* (Sept. 26, 2001), 9th Dist. No. 01CA007795, at *4-5. The trial court determined that Father "exhibited poor judgment" and lacked "necessary insight *** , given what was at stake."

{¶14} In addition to Father's second OVI charge, there was testimony at the allocation hearing that Father's work schedule was set to change. Father testified that, while he worked from 7:00 p.m. to 7:00 a.m. at the time of the divorce hearing, his new schedule would require

him to work from 7:00 a.m. to 7:00 p.m. Accordingly, Father planned to drive M.O. to day care at approximately 6:30 a.m. and have his mother pick her up at 6:30 p.m., the time when the day care closed. Father then would have to rely on his mother to take care of M.O. until his shift ended at 7:00 p.m. M.O. also was about to begin kindergarten, so there would be a greater need for stability in her schedule. Contrary to Father's argument, his OVI charge was not the only evidence of a change in circumstances presented at the reallocation hearing.

{¶15} The court, in exercising its discretion, determined that a change in circumstances occurred here. Given the nature of the specific facts before us, we do not believe that the court abused its discretion in reaching that conclusion. See *Pryor v. Hooks*, 9th Dist. No. 25294, 2010-Ohio-6130, at ¶10 (noting that a change of circumstances determination must be made "on a case by case basis, considering all of the surrounding circumstances unique to each case"). See, also, *Kirchhofer v. Kirchhofer*, 9th Dist. No. 09CA0061, 2010-Ohio-3797, at ¶11-13. We next consider whether the trial court abused its discretion by determining that a reallocation of parental rights and responsibilities was in M.O.'s best interest.

{¶16} R.C. 3109.04(F)(1) governs best interest determinations with regard to the reallocation of parental rights and responsibilities.

> "[In determining what is in the child's best interest,] the court shall consider all relevant factors, including, but not limited to:
>
> "(a) The wishes of the child's parents regarding the child's care;
>
> "(b) If the court has interviewed the child in chambers \*\*\*, the wishes and concerns of the child, as expressed to the court;
>
> "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> "(d) The child's adjustment to the child's home, school, and community;
>
> "(e) The mental and physical health of all persons involved in the situation;

"(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

"(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

"(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense ***;

"(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

"(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."  R.C. 3109.04(F)(1)(a)-(j).

Father does not challenge the weight of the evidence on any particular factor, but argues that the court abused its discretion in its ultimate determination that a change of custody would be in M.O.'s best interest.

{¶17}  As previously noted, M.O. resided in California with Mother for almost the entire first two years of her life and primarily resided with Father thereafter.  M.O. visited Mother in California on several occasions, however, and spoke with her regularly on the telephone.  Mother remarried in September 2008 and lived in a house with her new husband, who had shared custody of his two children from a prior marriage.  Mother testified that M.O. got along well with her new husband and the children, who were several years older than she was.  Mother further testified that M.O. would attend the same school as the other children if M.O. were to reside in California.  See R.C. 3109.04(F)(1)(c).

{¶18} Crawford, the Family Court Services Evaluator, described Mother's home in California as "routine and consistent."  She testified that M.O. loved and enjoyed spending time with both of her parents.  Although Mother and Father did not get along well with each other, there was no great concern that either one would fail to facilitate the companionship rights of the

other with regard to M.O. See R.C. 3109.04(F)(1)(f). Crawford acknowledged that M.O. appeared to be happy, well-adjusted, and generally well-cared for in Father's custody, but recommended that Mother be given custody in light of Father's second OVI. Crawford testified that Father's second OVI demonstrated poor judgment as a parent and that she was especially concerned about it given that both Mother and Father had accused each other of alcohol and drug abuse during the proceedings.

{¶19} Father continued to reside with his parents at the time of the reallocation hearing and depended on them to help with M.O. due to his work schedule. Father testified that he did not have any definitive plans to leave his parents' residence in the near future. There was testimony that a significant amount of Father's family lived in the area, but no indication that M.O. saw her extended family members at any time other than the holidays. See R.C. 3109.04(F)(1)(c)-(d). There was no testimony that M.O. had any important relationships with anyone in Ohio outside of Father's home. Id. Furthermore, because M.O. was just set to begin kindergarten, she would have to adjust to a new school in either Ohio or California. Id.

{¶20} Father admitted that he made a mistake when he received his second OVI. According to Father, he tried to be careful about drinking and driving on the night of his OVI and thought he waited long enough between the time he consumed several beers and the time that he drove. He acknowledged, however, that he was stopped for speeding and registered a blood alcohol content of .13. Father insisted that he did not have a drinking problem and that M.O. would not be affected by his OVI arrest because he did not tell her about it, he would try to serve his jail sentence when she was with Mother, and he could obtain driving privileges to transport her where she needed to go. Yet, Mother testified that M.O. was aware of the incident

and that she specifically told Mother that Father was "in trouble again." There was no evidence that Mother had any criminal record. See R.C. 3109.04(F)(1)(h).

{¶21} The trial court acknowledged that Mother had failed to pay the full amount of her court-ordered child support payments, despite her ability to do so. See R.C. 3109.04(F)(1)(g). It appears from Mother's testimony that her paychecks were not being garnished in the correct amount and Mother failed to have the error corrected. Yet, Mother continued to pay her portion of M.O.'s health care at all times. More importantly, while the court described Mother's failure to pay her child support obligation in full as a matter of "considerable concern," the court determined that Mother's failure to pay "d[id] not outweigh [F]ather's misuse of alcohol." Taking into consideration all the evidence before it, the magistrate and trial court determined that a change of custody was in M.O.'s best interest. We do not agree with Father's assertion that the court's determination amounted to an abuse of discretion. See *Baxter* at ¶6.

{¶22} The trial court did not abuse its discretion by adopting the magistrate's decision and determining that: (1) a change of circumstances occurred; and (2) a reallocation of the parties' parental rights and responsibilities was in M.O.'s best interest. Father's assignments of error are overruled.

III

{¶23} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

CHANDRA M. MUSTER, Attorney at Law, for Appellant.

JOHN M. DOHNER, Attorney at Law, for Appellee.