[Cite as *Kenney v. Carroll*, 2017-Ohio-354.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

ROBERT KENNEY

     Appellee

v.

HEIDI R. CARROLL

     Appellant

C.A. Nos.      13CA0090-M
                   15CA0102-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     09DR0598

DECISION AND JOURNAL ENTRY

Dated: January 31, 2017

---

MOORE, Judge.

{¶1} Heidi R. Carroll ("Mother") appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. This Court affirms in part, vacates in part, and remands this matter to the trial court for further proceedings consistent with this decision.

I.

{¶2} Mother and Robert Kenney ("Father") were married on February 16, 2008. They had one child born on September 4, 2008. In 2009, Father filed a complaint for divorce. In 2011, the trial court issued a decree of divorce and a judgment entry allocating parental rights and responsibilities, which adopted a shared parenting plan. The trial court ordered that Father pay to Mother $1,268.17 per month for child support. At that time, the child support worksheet reflected that Mother had no income, and that Father's income was $158,000. The worksheet listed no expense to either party for childcare. In the shared parenting plan, the parties agreed to

exercise parenting time as they should agree, but, if the parties were unable to reach agreement, Father was to enjoy parenting time with the child (with some exceptions) every other weekend from Friday at 6:00 p.m. until Monday at 8:00 a.m., every Thursday from 6:00 p.m. until Friday at 8:00 a.m., every other Tuesday from 5:00 p.m. until 8:00 p.m., and the remaining Tuesdays from 6:00 p.m. until Wednesday at 8:00 a.m. The parties further agreed to use the same daycare provider: a nanny hired by Mother. The plan indicated that, if Mother were to change daycare providers, the parties would discuss a new provider, and, if they could not agree as to a daycare provider, they would engage in mediation. If unable to resolve the issue through mediation, the plan provided that one of the parties would file a motion in the trial court to resolve the issue. The plan further provided that, when the child was age appropriate, he would attend preschool, and the parties would jointly select the preschool facility. With respect to the child's extracurricular activities, the plan provided that the parties would act reasonably and cooperate with each other in the joint selection of activities for the child. With respect to healthcare, the parties agreed to continue to use the child's current physicians, and, if new or additional healthcare providers were necessary, they would jointly decide on which providers to use.

{¶3} Thereafter, the parties filed several post-decree motions, which included a motion filed by Mother to modify child support and motions by both parties to modify the shared parenting plan. In Father's motion, he requested, in relevant part, a modification of the shared parenting plan to provide him with overnight parenting every Tuesday, and an order addressing childcare arrangements because the parties had been unable to agree upon childcare and preschool. In Mother's motion to modify the shared parenting plan, she requested, in relevant part, that decision-making authority be allocated between the parents, and that she be given authority to make decisions relative to the child's extracurricular activities and healthcare. Prior

to a decision on these motions, Mother enrolled the child in preschool at St. Francis Xavier, which is located in Medina County, where Mother lives, but is farther from the residence of Father, who resides in Cuyahoga County.

{¶4} After several days of hearings before a magistrate, on October 22, 2013, the magistrate issued a decision on the post-decree motions, which the trial court adopted on the same day. The trial court ordered that the parenting time schedule be modified, so as to equalize the parties' parenting time, by providing Father with parenting time on Wednesday and Thursday of each week, and, on alternating weeks, Father would continue to enjoy parenting time from Thursday until Monday morning. The court further ordered that the nanny was no longer required to be the exclusive daycare provider for the child, and, instead, the parties would make, and pay for, their own daycare arrangements. With respect to child support, the court ordered that Mother was not entitled to an adjustment for daycare expenses for the cost of the nanny. The court further determined that there was not a change of circumstances that would support a modification of child support for 2011, but there was such a change in 2012. For the year 2012, the trial court ordered child support in the amount of $1531.62 per month. Based upon the 2012 child support figure, the trial court then determined that there was not another change of circumstances that would require a modification of support for 2013.

{¶5} Thereafter, Mother filed objections to the magistrate's decision and an appeal from the trial court's order adopting the magistrate's decision. Father also filed a motion for clarification and/or objection to the magistrate's decision. While Mother's appeal was pending, Father requested this Court to remand the matter for the trial court to rule upon the objections. This Court issued the remand pursuant to App.R. 4(B). On November 5, 2015, the trial court overruled Mother's objections, except insofar as it modified the October 22, 2013 order adopting

the magistrate's decision to clarify the parenting time schedule. The trial court sustained Father's objection to the child support obligation, and it recalculated his obligation for the years 2012 and 2013. Mother filed an appeal from the November 5, 2015 order, and we consolidated the 2013 and 2015 appeals. Mother now presents five assignments of error for our review. We have combined Mother's second and third assignments of error to facilitate our discussion.

## II.

{¶6} Initially, we note that Mother has appealed from the order adopting the magistrate's decision and the subsequent order ruling on the parties' objections. A trial court's action on a magistrate's decision "lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. However, "we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. The standards of review applicable to the underlying matters challenged by Mother are identified in our respective discussions of Mother's assignments of error.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING [FATHER]'S MOTION TO MODIFY SHARED PARENTING PLAN AND EXPANDING [FATHER]'S PARENTING TIME WITH THE PARTIES' CHILD BEYOND WHAT HE REQUESTED IN HIS MOTION, AS [FATHER] FAILED TO DEMONSTRATE THAT A SUBSTANTIAL CHANGE OF CIRCUMSTANCES HAD OCCURRED AND SUCH MODIFICATION IS NOT IN THE BEST INTEREST OF THE CHILD.

{¶7} In her first assignment of error, Mother argues that the trial court erred in modifying the shared parenting plan to expand Father's parenting time. We disagree.

{¶8} "It is well established that an appellate court will not disturb the custody decision of a trial court absent a finding that the trial court abused its discretion." *Syverson v. Syverson*, 9th Dist. Lorain No. 12CA010205, 2012-Ohio-5569, ¶ 7, quoting *Lempner v. Lempner*, 9th Dist. Lorain No. 04CA008580, 2005-Ohio-4543, ¶ 7. "If * * * a litigant challenges a particular factual finding of the trial court, this Court will review the trial court's factual conclusion for competent, credible evidence." *Syverson* at ¶ 7, quoting *Oberlin v. Oberlin*, 9th Dist. Summit No. 25864, 2011-Ohio-6245, ¶ 7. "Yet, the trial court's ultimate 'determination of "whether a change in circumstances has occurred so as to warrant a change in custody" is one that must be reviewed under an abuse of discretion standard.'" *Syverson* at ¶ 7, quoting *Oberlin* at ¶ 7, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997), paragraphs one and two of the syllabus. An abuse of discretion connotes that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). In reviewing a trial court's action for an abuse of discretion, this Court is not permitted to substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993)

{¶9} "The standard a court must apply to a parent's motion to modify depends upon whether the parent seeks to modify the allocation of parental rights and responsibilities or simply a term of the shared parenting plan implementing the custodial arrangement." *Syverson* at ¶ 9, citing *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 26-27. "[A] request for a change in parenting time is a request to alter the physical control of the child and thus constitutes a request to modify the allocation of parental rights and responsibilities." *Gunderman v. Gunderman*, 9th Dist. Medina No. 08CA0067-M, 2009-Ohio-3787, ¶ 23. R.C. 3109.04(E)(1)(a) provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have

arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

"Although R.C. 3109.04(E)(1) does not enumerate the types of 'circumstances' that the trial court may consider, '[o]bviously, [those circumstances] may include any of the particular circumstances identified in paragraph (F)(1)(a)-(j) of that section.'" *Sypherd v. Sypherd*, 9th Dist. Summit No. 25815, 2012-Ohio-2615, ¶ 20, quoting *Averill v. Bradley*, 2d Dist. Montgomery No. 18939, 2001 WL 1597881, *3 (Dec. 14, 2001).

{¶10} Here, the testimony at the magistrate's hearings indicated that Mother was not employed at the time that the parties' shared parenting plan was approved. However, she had gained employment thereafter. The child had also begun attending preschool, in which he had been enrolled by Mother, in Mother's county of residence. This preschool was significantly farther from Father's residence, and from both of the parties' places of employment, than it was from Mother's residence. Also, Father testified to instances where he had less access than Mother to information from the child's nanny, and to the child when in the nanny's care, because the nanny was an employee of Mother. The trial court concluded that, although the above facts individually may not be sufficient to constitute a change of circumstances, the combination of these facts amounted to a change in circumstances.

{¶11} On appeal, Mother maintains that her return to work was contemplated by the parties when they entered into the shared parenting plan, and the changed circumstances relied

upon by the trial court did not have a material, adverse effect on the child. However, Mother cites no authority for the proposition that a change of circumstances must not have been anticipated at the time of the decree allocating parental rights and responsibilities. *See* App.R. 16(A)(7). Instead, Mother relies on the language of R.C. 3109.04(E)(1)(a) that requires that the change in circumstances be "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree[.]" Mother appears to read "unknown" as "unanticipated," and she further seems to implicitly read this portion of R.C. 3109.04(E)(1)(a) in the conjunctive, although it is written in the disjunctive. Mother develops no argument in support of her interpretation of R.C. 3109.04(E)(1)(a). She has failed to carry her burden on appeal in this regard. If there is an argument that can support Mother's interpretation, "it is not this [C]ourt's duty to root it out." *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶12} Next, we note that the child having reached the age at which the parties determined it was appropriate for him to attend preschool, does not, on its own, constitute a change of circumstances. *See Davis*, 77 Ohio St.3d at 420. However, the maturing of the child can be considered with other factors in determining whether a change of circumstances has occurred. *See id.* ("However, even a small change in age, which requires a major adjustment to previous visitation or custody arrangements, when combined with hostility between the parents that adversely affects the visitation or custody arrangement, may constitute a sufficient change of circumstances to warrant a change in custody."). Here, the trial court reasoned that the attendance of the child at preschool, the location of the preschool chosen by Mother, Mother's return to work, and the development of the daycare situation with respect to the nanny, taken

together, constituted a change of circumstances. We cannot say this determination was unreasonable, arbitrary, or unconscionable.

{¶13} With respect to the child's best interests, at the hearing, the guardian ad litem testified that he believed that an equalization in the parties' parenting time would be in the child's best interest. The guardian indicated that, although the parents had difficulty communicating with each other, both parents were appropriate and loving toward the child.

{¶14} The trial court concluded that the interests of the child were best served by equalizing Father's parenting time. In doing so, the trial court considered the factors set forth in R.C. 3109.04(F)(1), noting that the child had a positive relationship with both parents, and he was adjusted to both parties' homes and communities. The court determined that the evidence demonstrated that Father was a dutiful parent who had sought additional time with the child and had the means to engage the child in further activities. The court further concluded that an equalization of parenting time would benefit the child by providing him a predictable schedule that did not involve an undue number of exchanges between the parties.

{¶15} On appeal, Mother maintains that expansion of Father's parenting time was not in the child's best interest, primarily focusing her argument on the testimony before the trial court that established that the parties were unable to effectively communicate or to make joint decisions. However, in addressing the parties' inability to make collaborative decisions, the trial court divided ultimate decision-making authority between the parties, providing Mother with final decision-making authority as to the child's health care, and Father final decision-making authority as to the child's extracurricular activities, as will be discussed in the second assignment of error below.

{¶16}   Based upon the foregoing, we cannot say that the trial court's order equalizing the parties' parenting time was unreasonable, arbitrary, or unconscionable. Accordingly, we cannot say that the trial court abused its discretion.  Therefore, Mother's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY MODIFYING THE PARTIES' SHARED PARENTING PLAN TO GIVE [FATHER] FINAL DECISION MAKING AUTHORITY OVER THE CHILD'S EXTRACURRICULAR ACTIVITIES.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY MODIFYING THE PARTIES' SHARED PARENTING PLAN TO REQUIRE BOTH PARTIES TO USE THEIR OWN DAYCARE PROVIDER, AS SUCH ORDER IS NOT IN THE CHILD'S BEST INTEREST.

{¶17}   In her second and third assignments of error, Mother argues that the trial court erred in modifying the shared parenting plan so as to permit Father to make the decisions regarding the child's extracurricular activities and by requiring each party to use his or her own daycare provider.  We disagree.

{¶18}   "This Court reviews a trial court's decision to modify * * * [a shared parenting plan] for an abuse of discretion." *Batcher v. Pierce*, 9th Dist. Summit No. 26785, 2013-Ohio-4677, ¶ 22.  Unlike a modification to the allocation of parental rights and responsibilities, "a modification of a term of [a] shared parenting plan only requires proof that the modification is in the best interest of the child[.]" *Syverson*, 2012-Ohio-5569, at ¶ 9, citing *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, at ¶ 33.  *See also* R.C. 3109.04(E)(2)(b).

{¶19}   R.C. 3109.04(E)(2)(b) provides:

The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion

at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

{¶20} The trial court determined that the evidence established that the parties had been unable to reach agreements with respect to the child's activities and healthcare. However, it further concluded that both parents were capable of making good decisions for the child. Based upon these facts, the trial court agreed with the recommendation of the guardian ad litem that it would be in the best interest of the child that, if the parties could not otherwise agree, Father would have decision making authority concerning extracurricular activities, while Mother would have decision-making authority concerning healthcare.

{¶21} Further, in its order adopting the magistrate's decision, the trial court concluded that, because the nanny was Mother's employee and Mother had returned to work, it was not in the child's best interest to continue to have exclusive daycare by the nanny, who was not in a position to respond to both parents or address both parents' needs with the child. The court noted that the guardian ad litem had recommended that each party provide his and her own daycare arrangements for the child when that party is exercising parenting time, and the trial court agreed this would be in the child's best interest.

{¶22} On appeal, Mother maintains that the trial court abused its discretion in granting Father decision-making authority over the extracurricular activities based upon testimony that established a "power struggle" between the parties. Mother maintains that, because of this struggle, Father will abuse his decision-making authority by enrolling the child in activities exclusively in Cuyahoga County, where he resides. With regard to the Court's determination that each party will provide daycare for the child, Mother argues that the trial court abused its

discretion because the child will be required to adjust to different rules and routines utilized by different daycare providers.

{¶23} However, as set forth in our discussion of Mother's first assignment of error, the trial court concluded that it was in the best interest of the child for each parent to exercise parenting time with the child. However, the trial court noted that, due to the parents' inability to make collaborative decisions, each party had been enrolling the child in activities, resulting in both parents enrolling the child in separate swimming programs. The court concluded that dividing the decisions regarding the child, with Mother receiving ultimate decision-making authority for healthcare, and Father receiving ultimate decision-making authority for extracurricular activities, would resolve this issue and be in the child's best interest. With respect to the parties providing daycare for the child, the trial court determined that the nanny had been exclusively in Mother's employ. Because the nanny reported only to Mother, the trial court concluded it was not in the best interest of the child for the nanny to remain the exclusive daycare provider, as she was not in a position to address both parents' needs regarding the child.

{¶24} Based upon the foregoing, we cannot say that the trial court was unreasonable, arbitrary, or unconscionable in providing Father with the decision-making authority as to the child's extracurricular activities or ordering that the parties provide for their own daycare arrangements. Accordingly, we cannot say that the trial court's rulings constituted an abuse of discretion in these respects. Therefore, Mother's second and third assignments of error are overruled.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO MODIFY [FATHER]'S CHILD SUPPORT OBLIGATION FOR 2011 AND 2013, BY FAILING TO INCLUDE WORK RELATED CHILD CARE EXPENSES IN THE SUPPORT CALCULATIONS, BY FAILING TO

CONSIDER [FATHER]'S INCOME FROM HIS EMPLOYMENT AT CASE WESTERN RESERVE UNIVERSITY IN THE CHILD SUPPORT CALCULATIONS AND BY FAILING TO PROPERLY CALCULATE CHILD SUPPORT FOR THE PARTIES IN 2011, 2012, AND 2013.

{¶25} In her fourth assignment of error, Mother argues that the trial court erred in failing to include her work-related childcare expenses, and Father's income from an adjunct teaching position, in certain child support calculations and in recalculating the child support amount with a $150,000 income limit.

{¶26} "In general, 'a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion.'" *Ferriot v. Noga*, 9th Dist. Summit No. 28136, 2016-Ohio-7949, ¶ 8, quoting *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). An abuse of discretion "connotes a decision that is unreasonable, arbitrary, or unconscionable." *Ferriot* at ¶ 8, citing *Blakemore*, 5 Ohio St.3d at 219. "If the issue on appeal, however, 'is whether the trial court correctly applied the child support statute, this Court employs a de novo standard of review.'" *Ferriot* at ¶ 8, quoting *Michaels v. Saunders*, 9th Dist. Lorain No. 14CA010604, 2015-Ohio-3172, ¶ 15. "In addition, 'an appellate court reviews the factual findings to support that award under a manifest-weight-of-the-evidence standard.'" *Ferriot* at ¶ 8, quoting *Havrilla v. Havrilla*, 9th Dist. Summit No. 27064, 2014-Ohio-2747, ¶ 13, quoting *Wallace v. Wallace*, 195 Ohio App.3d 314, 2011-Ohio-4487, ¶ 10 (9th Dist.).

{¶27} "In general, child support under [a shared parenting plan] is computed using the computation worksheet set forth in R.C. 3119.022." *Batcher,* 2013-Ohio-4677, at ¶ 9; *Varner v. Varner*, 170 Ohio App.3d 448, 2007-Ohio-675, ¶ 7 (9th Dist.). "Line 19 of the worksheet asks for the expenses for child care, including day care." *Varner* at ¶ 7. Although, in instances of shared parenting, child support is generally calculated under R.C. 3119.022, "[w]hen the

combined gross income of the parents exceeds $150,000, * * * child support is determined under R.C. 3119.04(B) * * *." *Batcher* at ¶ 9, quoting *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 5. "When modifying an existing child support order, a trial court must find that a change of circumstances has occurred." *Batcher* at ¶ 10, quoting *Farmer v. Farmer*, 9th Dist. Medina No. 03CA0115-M, 2004-Ohio-4449, ¶ 10. "A change of circumstances is found if the recalculated amount is more than ten percent less or greater than the amount previously required as child support." *Batcher* at ¶ 10, quoting *Maguire v. Maguire*, 9th Dist. Summit No. 23581, 2007-Ohio-4531, ¶ 7.

{¶28} Here, at the commencement of the hearing on the parties' post-decree motions, the parties entered into stipulations regarding their income. It was agreed that for 2011, Mother's income was $10,415, and Father's income from his employment at the Cleveland Clinic was $160,410. In 2012, Mother earned $41,159, and Father earned $18,000 from an adjunct teaching position at Case Western Reserve, and $168,214 from the Cleveland Clinic. The parties also stipulated that, in 2013, Mother earned a $65,000 per year salary with a $380 bonus, but the parties did not stipulate as to Father's 2013 income. During Father's testimony on this issue, he maintained that, in 2013, he was making $180,000 annually through his position with the Cleveland Clinic, but he was not, as of that point, contracted to teach at Case Western Reserve. Further, the parties stipulated that Mother paid the nanny a salary of $10,800 in 2010, $32,400 in 2011, and $31,200 in 2012.

{¶29} In the magistrate's decision, the magistrate concluded that Mother was not entitled to an adjustment for daycare expenses for the cost of the nanny. The magistrate further determined that there was not a change of circumstances that would support a modification of child support for 2011, but there was such a change in 2012. For the year 2012, the trial court

ordered child support in the amount of $1531.62 per month, a calculation that included Father's teaching income. Based upon the 2012 child support figure, the trial court then determined, using a child support computation that did not include Father's teaching income, that there was not another change of circumstances that would require a modification of support for 2013.

{¶30} As set forth in our recitation of the facts, Mother filed objections to the magistrate's decision and also filed an appeal from the trial court's order adopting the magistrate's decision. In her objections, Mother challenged the magistrate's failure to include Mother's work-related daycare expenses in the child support calculations for 2011, 2012, and 2013, and the magistrate's failure to include Father's income from his teaching position in his 2013 income. Father also filed a motion for clarification and/or objection to the magistrate's decision. Therein, Father objected to the inclusion of income from his employment as an adjunct professor in the child support calculation for 2012.

{¶31} After this Court remanded this matter for the trial court to rule on the objections, the trial court overruled Mother's objections as to child support, but it sustained Father's objection to the child support obligation by removing his earnings as an adjunct teacher from the 2012 calculation. The trial court then recalculated Father's support obligation using a $150,000 limit on the parties' earnings on the child support worksheets.

{¶32} On appeal, Mother maintains that: (1) the trial court should have adjusted the child support calculation based upon her daycare expenses, (2) the trial court should have included Father's income as an adjunct professor in both the 2012 and 2013 calculations, and (3) the trial court should not have recalculated the support using a $150,000 income limit. We will separately address (1) the trial court overruling Mother's objections with regard to childcare expenses, (2) the trial court overruling Mother's objection and sustaining Father's objection

regarding his adjunct teaching income from 2012 and 2013, and (3) the trial court's recalculation of Father's support obligation using a calculation which limited the income of the parties to $150,000 per year.

Childcare Expenses

{¶33}  In 2010, Mother hired a nanny.  The nanny worked at Mother's home from 6:30 a.m. until 6:00 p.m. Monday through Friday.  In the parties' shared parenting plan, adopted in 2011, the parties indicated that Mother had employed a fulltime nanny for the child.  At the time that the shared parenting plan was adopted, Mother was not employed.  Thereafter, Mother began performing contract work from her home, and she continued to do so until December 2011.  Mother then commenced employment at Akron General Hospital from January 2012 to April 2012.  Thereafter, Mother worked for University Hospital from May 29, 2012 through the date of the trial court's remand hearing.  The trial court included no portion of the nanny's salary as a work-related childcare expense on the child support worksheets.

{¶34}  On appeal, Mother argues that "[t]he reasonableness of the expense [for the nanny] is certainly debatable, and the trial court had a right to discount the cost of the nanny to what it considered to be a reasonable expense for work related daycare."  Although Mother maintains that the trial court should have awarded her some amount it deemed reasonable for the nanny's services while she was employed, Mother has not directed this Court to any authority which holds that the trial court abuses its discretion when it fails to include a daycare expense different than the expense actually paid where the moving party is seeking the full amount of the expense to be included as an adjustment.  *Compare with Varner*, 170 Ohio App.3d 448, 2007-Ohio-675, at  ¶ 9 (where both parties testified as to the amount expended on work-related daycare, and there was no indication that either party disputed the necessity or reasonableness of

the expense, the trial court erred in failing to adjust the child support amount with the work-related daycare expense); and *Daufel v. Daufel*, 2d Dist. Montgomery No. 22584, 2008-Ohio-3868, ¶ 38 (where trial court found amount paid by Mother in childcare was unreasonable, it did not abuse its discretion in reducing the daycare expense for child support purposes to the amount that Father paid for childcare, which the court found to be reasonable). Accordingly, as the trial court here did not conclude that nanny's salary was a reasonable daycare expense, we cannot say that the trial court was unreasonable, arbitrary, or unconscionable, in failing to include on the child support worksheet a lesser amount for which Mother did not advocate. Therefore, to the extent that Mother argues that the trial court erred in failing to include an amount for her daycare expenses in the child support calculation, her fourth assignment of error is overruled.

Father's Teaching Income

{¶35} With respect to Father's income from Case Western Reserve, the magistrate did not include this income in the child support computation for 2013 because it was non-recurring. *See* R.C. 3119.01(C)(7)(e) (gross income for child support computation purposes does not include non-recurring income). When ruling on parties' objections, the trial court determined that Father's 2012 teaching income should not have been included in the 2012 calculation for the same reason.

{¶36} On appeal, Mother maintains that Father regained the position in the fall of 2013, so the income was in fact recurring. However, at the time of the hearing, Father testified that he had performed the teaching position for only one year, and he had not been contracted to perform the work again. Based upon this, the trial court concluded that the income from this employment was non-recurring at that point in time. Given Father's uncertainty regarding continuing contracts for the teaching position, we cannot say the trial court decision in this regard was

unreasonable. Accordingly, to the extent that Mother argues that the trial court erred in not including his teaching income in the child support calculations for 2012 and 2013, her fourth assignment of error is overruled.

Calculation for Incomes Exceeding $150,000

Next, although the parties' stipulations indicate that their incomes exceeded $150,000 per year, in the support calculation attached to the magistrate's decision, the magistrate did not calculate support based upon the parties' income exceeding $150,000. *See Batcher*, 2013-Ohio-4677, at ¶ 9. However, Mother filed her appeal from the trial court's adoption of the magistrate's decision. After Mother's appeal was filed, this Court remanded this matter only for the trial court to rule on objections to the magistrate's decision. As this Court relinquished jurisdiction only with respect to the trial court ruling upon the parties' objections, the trial court lacked jurisdiction to proceed to alter the child support calculation except to the extent that it was ruling upon the objections. *See In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, ¶ 9. Neither party objected to the magistrate's decision on the basis that the magistrate failed to use a calculation pertinent to incomes over $150,000. Accordingly, to the extent that Mother challenges the trial court's use of a $150,000 income limit in its support calculation, her fourth assignment of error is sustained, as we conclude that the trial court exceeded its jurisdiction provided by the limited remand when it recalculated support in this manner. Therefore, insofar as the trial court imposed a $150,000 income limit, its judgment is vacated, and this matter is remanded for the trial court to recalculate child support for the years at issue without utilization of the $150,000 income limitation.

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ADMITTING INTO EVIDENCE THE HEARSAY REPORT OF DR. DEBORAH KORICKE AFTER SHE FAILED TO TESTIFY DURING THE HEARING, AND ERRED BY ADOPTING THE REPORT AS AN INDEPENDENT INVESTIGATION OF THE PARTIES FOR THE COURT UNDER []R.C. 3109.04.

{¶37} In her fifth assignment of error, Mother argues that the trial court erred in considering Dr. Deborah Koricke's report when making its decision. We disagree.

{¶38} Mother had requested Dr. Koricke perform a psychological evaluation of the parties, and the trial court ordered the parties to submit to the evaluation. Dr. Koricke submitted her report to the trial court, which it filed in its confidential file. The trial court concluded that the report was properly considered as a court-ordered investigation, pursuant to R.C. 3109.04(C), without Dr. Koricke testifying. In her argument on appeal, Mother maintains that Dr. Koricke's report was not an independent investigation because only Mother paid for the investigation. Further, Mother maintains that the report amounted to hearsay under Evid.R. 801, and it was not properly identified or authenticated pursuant to Evid.R. 901.

{¶39} R.C. 3109.04(C) provides, in relevant part, "[p]rior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations."

{¶40} Here, Mother does not direct this Court to any authority for the proposition that, in order for a report to constitute a court-ordered investigation under R.C. 3109.04, the court must equally divide the cost among the parties. *See* App.R. 16(A)(7). We decline to construct an argument on her behalf.

{¶41} With respect to Mother's evidentiary arguments, "[a] trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66 (1991).

{¶42} Here, Mother develops no argument in her merit brief as to how the contents of Dr. Koricke's report prejudiced her. *See* App.R. 16(A)(7). Although the guardian ad litem testified as to certain aspects of the report when setting forth his recommendations with respect to the best interests of the child, on appeal Mother challenges admission of the report, and not the admission of the guardian's testimony with respect to the report. Further, the report has not been included in the record submitted on appeal. *See Najmi v. Najmi*, 9th Dist. Lorain No. 07CA009293, 2008-Ohio-4405, ¶ 11, quoting *Saluppo v. Saluppo*, 9th Dist. Summit No. 22680, 2006-Ohio-2694, ¶ 38 ("[A]n appellant bears the burden of ensuring that the record necessary to determine the appeal is filed with the appellate court."). Accordingly, we cannot say that Mother was prejudiced by "admission" of the report. Therefore, Mother's fifth assignment of error is overruled.

III.

{¶43} Mother's first, second, third, and fifth assignments of error are overruled. Mother's fourth assignment of error is overruled in part, and sustained in part. The judgment of the trial court is affirmed except to the extent that that the trial court recalculated child support using a $150,000 income limit. To the extent it did so, the trial court's judgment is vacated, and this matter is remanded for the trial court to recalculate child support consistent with this decision.

Judgment affirmed in part,
vacated in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
CARLA MOORE
FOR THE COURT


SCHAFER, J.
CONCURS.

CARR, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶44} I concur in judgment only with the majority opinion except in relation to the analysis of child care expenses in the fourth assignment of error. I would reverse and remand for the trial court to include a reasonable amount of child care expenses in calculating child support.

**{¶45}** I concur with the remainder of the opinion.

APPEARANCES:

JAMES L. LANE, Attorney at Law, for Appellant.

ANDREA L. BURDELL-WARE, Attorney at Law, for Appellee.