[Cite as *In re D.T.*, 2015-Ohio-5041.]

STATE OF OHIO            )                    IN THE COURT OF APPEALS
                         )ss:                 NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN         )

IN RE: D.T.                                   C.A. No.      14CA010700
      J.T.
      R.T.


                                             APPEAL FROM JUDGMENT
                                             ENTERED IN THE
                                             COURT OF COMMON PLEAS
                                             COUNTY OF LORAIN, OHIO
                                             CASE Nos.   12JC36788
                                                         12JC36865
                                                         12JC35294

DECISION AND JOURNAL ENTRY

Dated: December 7, 2015

---

SCHAFER, Judge.

{¶1}   Appellant, Terry T. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed three of her minor children in the legal custody of relatives. This Court affirms.

I.

{¶2}   Mother is the biological mother of five children, three of whom are parties to this appeal: D.T., born July 22, 1998; J.T., born November 11, 1999; and R.T., born May 8, 2003. The children's father did not appeal the trial court's judgment.

{¶3}   During January 2012, LCCS filed dependency and neglect complaints, alleging that Mother was failing to meet the basic needs of her children because she had mental health and/or substance abuse problems and there was domestic violence in the home. At that time, LCCS filed complaints pertaining only to Mother's youngest two children, R.T. and N.T. (who is

not a party to this appeal), and the trial court allowed them to remain in the home under an order of protective supervision.

{¶4} By August 2012, however, all of Mother's minor children were removed from her home because Mother had refused to comply with the case plan requirements that she undergo mental health and drug assessments and treatment. Mother had admitted to the caseworker that she had past drug problems and had received mental health treatment in the past, but she refused to address those problems. LCCS had become most concerned about Mother's untreated mental health problems because she often behaved in an erratic or threatening manner.

{¶5} The trial court later adjudicated the children neglected and dependent and placed D.T. in the temporary custody of LCCS and J.T. and R.T. in the temporary custody of a maternal aunt. LCCS initially placed D.T. in foster care, but was later able to place him in the home of his paternal grandparents.

{¶6} The reunification goals of the case plans included several requirements for Mother but focused primarily on her stabilizing her mental health by obtaining psychiatric and psychological evaluations and following any treatment recommendations. As the caseworker would later explain, until Mother's mental health and behavior improved, she would be unable and/or unwilling to work on other reunification goals. During the next several months, however, Mother started, but did not complete, a psychological evaluation and did not follow through with a psychiatric assessment. Consequently, her unstable mental health continued to be the primary obstacle to her reunification with her children.

{¶7} On November 1, 2013, LCCS filed an amended case plan to terminate Mother's supervised visits until she followed through with mental health treatment. After a hearing, the trial court overruled Mother's objections and adopted the amended case plan. Mother's refusal

to seek mental health treatment continued for many more months, so she was unable to visit the children.

{¶8} On March 26, 2014, Mother was found alone in a marshy area, where she had apparently been stuck for several days after wandering from her home. She was paranoid, delusional, and suffering from hypothermia, so she was transported to a hospital. After Mother's physical condition stabilized, she was transferred to the psychiatric ward, where she began taking psychiatric medications and remained for more than a month.

{¶9} While Mother was hospitalized, LCCS moved the trial court to place D.T. in the legal custody of his paternal grandparents and to place J.T. and R.T. in the legal custody of the maternal aunt. Following a hearing on the motions several months later, the trial court found that it was in the best interests of the children to be placed in the legal custody of the respective relatives. Consequently, it granted the legal custody motions filed by LCCS.

{¶10} Mother appeals and raises one assignment of error pertaining to the legal custody judgments. Although Mother also assigns error to the final disposition of her youngest child, N.T., that alleged error is not properly before us because N.T. is not a party to this appeal.

II.

**ASSIGNMENT OF ERROR**

THE GRANT OF LEGAL CUSTODY OF 1-D.T. TO PATERNAL GRANDPARENTS AND THE GRANT OF LEGAL CUSTODY OF 2-J.T. AND 3-R.T. TO AUNT WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} Mother argues that the trial court committed reversible error by placing the children in the legal custody of their relatives. Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child. *See In re D.R.*,

153 Ohio App.3d 156, 2003-Ohio-2852, ¶ 17 (9th Dist.). "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. The trial court's decision to grant or deny a motion for legal custody is within its sound discretion and will not be reversed absent an abuse of discretion. *In re M.S.*, 9th Dist. Summit No. 22158, 2005-Ohio-10, ¶ 11. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} "[T]his Court has held that the best interest test set forth in R.C. 2151.414(D), although it relates to permanent custody, 'provide[s] guidance' in legal custody determinations." *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, quoting *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. When determining a child's best interest under R.C. 2151.414(D), the juvenile court must consider all the relevant enumerated factors: the interaction and interrelationships of the children, their wishes, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3 (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

{¶13} Mother's only argument on the best interest factors is that the children wanted to return to her home and that she was given little opportunity to continue her established relationship with them because her visits were terminated. The termination of Mother's visits with the children was litigated at a hearing before the trial court on Mother's objections to the

amended case plan. Mother has not assigned error to the amended case plan, nor has she supplied this Court with a transcript of that hearing.

{¶14} Moreover, the record reveals that Mother had serious mental health problems, which she refused to acknowledge or address through consistent treatment. Although LCCS was also concerned about the unsuitable condition of Mother's home, potential substance abuse problems, and other issues, the caseworker testified that those were secondary issues. LCCS was most concerned about Mother's combative and erratic behavior and recognized that she could not begin to address the other components of the case plan until she stabilized her mental health.

{¶15} More than four months after her visits with the children were terminated, Mother was involuntarily hospitalized in a psychiatric ward for more than a month. While hospitalized, she eventually began taking psychiatric medications and continued to do so while she was hospitalized. The caseworker testified that he noticed a significant improvement in Mother's behavior after she was released from the hospital. Mother failed to attend her follow-up appointment ten days later at Nord Center, however, so she received no further mental health treatment. Over time, the caseworker observed a decline in Mother's behavior and believed that she had stopped taking her psychiatric medications.

{¶16} Mother admitted at the hearing that she did not attend her follow-up psychiatric appointment, nor had she received any mental health treatment since her release from the hospital more than four months earlier. Although she initially testified that she had been regularly taking the psychiatric medications that had been prescribed at the hospital, she admitted on cross-examination that she had not been prescribed a sufficient supply of medication at the hospital to last four months. Mother then conceded that she had not been taking the medications every day because she was attempting to stretch her limited supply.

{¶17} Mother attempted to persuade the trial court that she had no mental health issues but her testimony and behavior during the hearing suggested otherwise. Before Mother testified, the trial judge repeatedly asked her to lower her voice because she was apparently speaking loudly during the testimony of other witnesses. When Mother testified at the hearing, her responses to questions were often rambling, off topic, and/or difficult to believe. For example, she made unrelated and odd references to her neighbor killing cats and the doctors at the hospital blackmailing her family. Rather than stating that she did not remember why she was found in the marsh before she was hospitalized, she attempted to explain the incident in a manner that was almost incoherent. Notably, none of her testimony or any of the evidence before the trial court demonstrated that Mother's mental health problems were under control or that she had the ability to provide her children with a suitable home.

{¶18} Regarding the children's wishes, there was evidence before the trial court that the children missed Mother and wanted to return to her home. The guardian ad litem further explained, however, that the children worry about Mother being able to take care of herself and that they seem to want to take care of her.

{¶19} By the time of the hearing, D.T., J.T., and R.T. had been living outside Mother's custody for more than two years. D.T. had recently been placed with the paternal grandparents and J.T. and R.T. had been living with a maternal aunt throughout this case. All three children were living in structured and appropriate environments with their respective caregivers, who were committed to maintaining visits between all three children.

{¶20} The children were in need of a legally secure permanent placement and Mother was not able to provide them with a stable home. Several witnesses testified about the suitability of the proposed custodians and their willingness to provide the children with permanent homes.

Consequently, the trial court reasonably concluded that it was in the best interests of the children for D.T. to be placed in the legal custody of his paternal grandparents and J.T. and R.T. to be placed in the legal custody of their aunt. Mother's assignment of error is overruled.

### III.

{¶21} Mother's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
MOORE, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

NICHOLAS J. HANEK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and FAYE SUTTON, Assistant Prosecuting Attorney, for Appellee.