[Cite as *Kenney v. Carroll*, 2021-Ohio-1911.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

ROBERT J. KENNEY

    Appellee

v.

HEIDI R. CARROLL

    Appellant

C.A. No.    19CA0080-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    09 DR 0598

DECISION AND JOURNAL ENTRY

Dated: June 7, 2021

HENSAL, Presiding Judge.

{¶1}    Heidi Carroll has appealed from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, this Court affirms in part, reverses in part, and remands the matter for further proceedings.

I.

{¶2}    This case has a long procedural history, much of which is not relevant to this appeal. What is relevant is that Ms. Carroll ("Mother") and Mr. Kenney ("Father") married in 2008, had one son ("C.K.") together later that year, and that Father filed for divorce in 2009. In 2011, the trial court issued a decree of divorce and a judgment entry allocating parental rights and responsibilities, which adopted a shared parenting plan. At that time, the child support worksheets reflected that Mother had no income and that Father's income was $158,000. The trial court, therefore, ordered Father to pay Mother $1,268.17 per month in child support.

{¶3} The parties filed several post-decree motions and have been before this Court in two prior appeals, one of which was a consolidated appeal. This Court issued its first decision in *Kenney v. Carroll*, 9th Dist. Medina Nos. 13CA0090-M and 15CA0102-M, 2017-Ohio-354 ("*Kenney I*"), and its second decision in *Kenney v. Carroll*, 9th Dist. Medina No. 17CA0042-M, 2018-Ohio-1882 ("*Kenney II*").

{¶4} In *Kenney I*, Mother appealed from the trial court's October 22, 2013, order adopting a magistrate's decision relative to several post-decree motions, including Mother's motion to modify child support. *Kenney I* at ¶ 4. The trial court's order addressed that motion, among others, and "determined that there was not a change of circumstances that would support a modification of child support for 2011, but there was such a change in 2012." *Id*. As a result, the trial court increased Father's monthly child support obligation to $1,531.62 for the year 2012. *Id.* "Based upon the 2012 child support figure, the trial court then determined that there was not another change of circumstances that would require a modification of support for 2013." *Id.*

{¶5} After Mother appealed, Father moved this Court to remand the matter so that the trial court could rule on the parties' objections to the magistrate's decision, which this Court granted. *Id.* at ¶ 5. On November 5, 2015, the trial court sustained Father's objection to the child support obligation, and recalculated Father's obligation for the years 2012 and 2013. *Id*. It set Father's new monthly child support obligation to $1,003.26 effective January 1, 2012. *Kenney II* at ¶ 3. Mother appealed the November 5, 2015 order, and this Court consolidated that appeal with the then-pending appeal. *Kenney I* at ¶ 5.

{¶6} Mother assigned several errors on appeal in *Kenney I,* including that the trial court erred in recalculating Father's child support obligation with a $150,000 income limit when there was no dispute that Father earned over $150,000. *Id.* at ¶ 25, 28. This Court agreed, but for

jurisdictional reasons. *Id.* at ¶ 36. This Court noted that it remanded the matter only for the trial court to rule on the parties' objections to the magistrate's decision, and that neither party had objected to the magistrate's decision on the basis that the magistrate failed to use a calculation applicable to incomes over $150,000. *Id.* We concluded that the trial court exceeded its jurisdiction provided by the limited remand when it recalculated support in this manner and, insofar as the trial court imposed a $150,000 income limit, vacated its judgment. We then "remanded for the trial court to recalculate child support for the years at issue without utilization of the $150,000 income limitation." *Id.*

{¶7} On remand, the trial court issued a judgment entry captioned as a nunc pro tunc entry, which addressed Father's child support obligation. In doing so, the trial court considered additional matters and conducted a new analysis. *Kenney II,* 2018-Ohio-1882, at ¶ 5. It again set Father's monthly child support obligation to $1,003.26. *Id.* at ¶ 6. Mother appealed that judgment entry in *Kenney II*, arguing, in part, that the trial court erred by using a nunc pro tunc entry to make substantive changes to its prior judgment entry regarding Father's child support obligation. *Id.* at ¶ 7. This Court agreed, reversing and remanding the matter for the trial court to vacate its attempted nunc pro tunc entry and to calculate child support in accordance with *Kenney I*, that is, without utilization of the $150,000 income limitation. *Id.* at ¶ 13; *Kenney I* at ¶ 36.

{¶8} On remand for the second time, the trial judge recused herself and a visiting judge addressed this Court's decision in *Kenney II*, as well as other pending motions. The visiting judge issued a judgment entry on October 23, 2019, ordering, in part, that Father pay $1,075.98 in monthly child support effective November 1, 2019, and that Father maintain possession of C.K.'s passport unless Mother needed it to travel with C.K. Both parties sought clarification of that judgment entry, including clarification of the issues regarding C.K.'s out-of-pocket medical

expenses, the annual dependent child tax exemption, retroactive child support, and C.K.'s international travel. Mother also appealed the visiting judge's October 23, 2019, order to this Court. This Court remanded the matter for the visiting judge to address the parties' respective motions for clarification. The visiting judge then issued a new judgment entry on April 21, 2020.

{¶9} In the April 21, 2020, judgment entry, the visiting judge addressed: (1) the calculation of child support from October 11, 2011, until October 22, 2013, and through June 6, 2019; (2) child support from June 6, 2019, forward, including a consideration of out-of-pocket medical costs and tax exemptions; and (3) Mother's motion to reconsider international travel. The visiting judge indicated that, for some unknown reason, the prior judge captioned her judgment entry (i.e., the judgment entry subject to this Court's remand in *Kenney II*) as a nunc pro tunc entry. The visiting judge indicated that the improper caption of that entry was the basis for this Court's reversal in *Kenney II*, not the merits of the prior judge's calculation of child support. It, therefore, concluded that nothing in *Kenney II* required it to reach a different conclusion with respect to the calculation of child support, which the visiting judge considered to be reasonable and appropriate.

{¶10} The visiting judge then addressed the needs and standard of living of C.K., as required under Revised Code Section 3119.04(B) when the combined annual gross income of the parents is above $150,000.[1] In doing so, the visiting judge indicated that C.K. is well provided for, and that he enjoys a very high standard of living with Mother. Regarding C.K.'s education expenses, the visiting judge indicated that C.K.'s private-school education was previously funded through a scholarship and, when the scholarship ended, through a trust fund provided by his

---

[1] We note that Section 3119.04 was amended effective March 28, 2019, and, unlike the prior version, no longer contains subsections (A) and (B). The visiting judge referenced the prior version, and the parties have done so on appeal. This Court will do the same.

maternal grandparents. The visiting judge stated that it was anticipated that C.K.'s maternal grandparents would continue to fund C.K.'s private-school education through high school. The visiting judge also noted that Mother lives in a nice, newer residential development, and that she owns numerous rental properties. The visiting judge further noted that Mother's family owns a profitable business, and that she has access to vast familial financial resources that have allowed her and C.K. to enjoy a very high standard of living.

{¶11} The visiting judge then discussed Father's support of C.K. beyond his child support obligation. The visiting judge noted that Father has two additional children with his now-wife, that he provides for C.K. 50% of the time, and that he supports C.K.'s extracurricular activities and interests. The visiting judge concluded that "[b]ecause of the high standard of living enjoyed by [Mother], her access to vast familial financial resources and [Father's] full financial support of [C.K.] during his 50% parenting time, [Mother] simply does not need any more than the minimum child support called for by R.C. 3119.04(B) in order to adequately provide for [C.K.'s] needs and standard of living[,]" and there is "simply no reason or evidentiary support to increase Child Support over the $150,000 limit." It then quoted portions of the prior judge's nunc pro tunc entry regarding the child support calculation, noted that it agreed with that analysis, and emphasized that Section 3119.04(B) provides a floor, which Mother has no absolute right to go above. It concluded that it was Mother's burden to establish that it was in C.K.'s best interest to go above that amount, which she failed to do. It then concluded that Father's monthly child support obligation from January 1, 2012, through November 1, 2019, shall be $1,003.26, and Father's monthly child support obligation from November 1, 2019, forward shall be $1,003.26 until further order by the court.

{¶12} In addition to the child support issue, the visiting judge also determined that: (1) consistent with prior orders, Mother and Father would alternate years as to which party could claim the annual dependent tax exemption/credit, providing that Mother shall do so in even years, and Father shall do so in odd years; (2) the parties shall split C.K.'s out-of-pocket medical expenses equally; and (3) consistent with its October 23, 2019, order, Father would retain possession of C.K.'s passport.

{¶13} Mother now appeals, raising seven assignments of error for this Court's review. We have combined some of her assignments of error.

II.

ASSIGNMENT OF ERROR I

THE DOMESTIC RELATIONS COURT ERRED AND FURTHER VIOLATED THE LAW-OF-THE-CASE DOCTRINE, WHERE IT FAILED TO COMPLY WITH THE MANDATE OF THE OHIO NINTH DISTRICT COURT OF APPEALS TO RECALCULATE CHILD SUPPORT FOR THE PARTIES IN 2011, 2012, AND 2013 WITHOUT UTILIZATION OF THE $150,000 INCOME LIMITATION.

ASSIGNMENT OF ERROR II

THE DOMESTIC RELATIONS COURT ERRED AND ABUSED ITS DISCRETION BY (1) DECLINING TO ORDER THAT THE APPELLEE-FATHER'S CHILD SUPPORT OBLIGATION FOR THE 2012 AND 2013 CALENDAR YEARS, AND THEREAFTER BE SET IN ACCORDANCE WITH THE HIGHER RECALCULATIONS FOLLOWING REMAND, (2) BY CONDUCTING ITS R.C. 3119.04(B) ANALYSIS USING FALSE AND/OR UNSUPPORTED EVIDENCE CONCERNING MOTHER'S STANDARD OF LIVING, AND (3) BY UTILIZING THE CURRENT 2019 CHILD SUPPORT WORKSHEET FOR PAST YEARS.

ASSIGNMENT OF ERROR III

THE DOMESTIC RELATIONS COURT ERRED AND ABUSED ITS DISCRETION BY IN ITS CALCULATION OF THE CHILD SUPPORT FROM NOVEMBER 2019 FORWARD, AND FURTHER ERRED BY RELYING ON IRRELEVANT HEARSAY EVIDENCE AND UNSUBSTANTIATED

EVIDENCE THAT WAS NOT PROPERLY SUBMITTED INTO EVIDENCE. (SIC.)

{¶14}   Mother's first three assignments of error challenge the visiting judge's child support calculation.  In her first assignment of error, Mother argues that the visiting judge erred by yet again failing to comply with this Court's remand instructions, which required the visiting judge to "recalculate child support for the years at issue [i.e., 2011, 2012, and 2013] without utilization of the $150,000 income limitation."  *Kenney I* at ¶ 36, 43; *Kenney II* at ¶ 13.  She argues that the visiting judge's April 21, 2020, judgment entry orders Father to pay the same amount of child support, i.e., $1,003.26, as the prior erroneous orders, and that doing so results in her being responsible for over $27,000 in overpayments from January 2012 until November 2015.

{¶15}   In response, Father argues that Mother has misinterpreted this Court's remand instructions.  He argues that this Court ordered the trial court to *calculate* child support using Section 3119.04(B) as a starting point, and not necessarily to *order* child support without the $150,000 income limitation.  He argues that the visiting judge complied with this Court's remand instructions and that Mother is simply not satisfied with the result.  He asserts that, if there was an error, it was the fact that the visiting judge did not attach the child support guidelines to its judgment entry.

{¶16}   In her second assignment of error, Mother argues that the visiting judge erred by calculating Father's child support obligation from 2012 forward using the $150,000 income limit, by conducting an analysis under Section 3119.04(B) using false and/or unsupported information concerning her standard of living, and by using the 2019 worksheet retroactively.  Regarding the false and/or unsupported information concerning her standard of living, Mother argues that the visiting judge relied on her parents' financial status and real-property assets to conclude that she has vast familial resources at her disposal, which – she argues – is not the case.  She argues that

the visiting judge improperly imputed her parents' standard of living on her, and that it did so without relying on any evidence in the record. Regarding the visiting judge's use of the 2019 worksheet, Mother argues that the only worksheet attached to the October 23, 2019, judgment entry (which the visiting judge relied on in the April 21, 2020, judgment entry) is from 2019 and was calculated based upon the March 2019 revised Ohio Child Support Guidelines. She argues that the visiting judge abused its discretion by relying on a 2019 worksheet when calculating child support for periods prior to March 2019, and that the 2019 worksheet is not relevant for purposes of determining retroactive child support in this case. She argues that the 2019 worksheet, the income of the parties, Father's additional children with his now-wife, and the 2019 guidelines were not even in existence during the years for which the visiting judge was required to calculate Father's child support obligation.

{¶17} In response, Father argues that Mother agreed to brief the matter below rather than have a hearing. He argues that she had the opportunity to brief any issues regarding the supposed false and/or unsupported information, and that she is simply not satisfied with the visiting judge's decision. He also argues that the visiting judge did not err by using the 2019 child support worksheet. He asserts that the visiting judge clearly used and referenced the correct child support worksheets attached to his July 20, 2018, brief on the matter, and that those worksheets did not show any additional income for Mother. He again asserts that, if there was an error, it was the fact that the visiting judge did not attach the child support guidelines to its judgment entry.

{¶18} In her third assignment of error, Mother argues that the visiting judge abused its discretion by including a childcare credit of $4,605.12 to Father, who provided no evidence regarding the apparent childcare costs he has incurred for C.K., and that it abused its discretion by not considering the factors under Section 3119.23 before granting a deviation. Mother asserts that

the trial court placed great weight on the irrelevant and unsubstantiated familial resources of her parents, as opposed to Mother herself. She also argues that the trial court refused to consider evidence that supported an upward deviation in order to maintain C.K.'s standard of living, including the disparity of income between parties or households, other assets, and the needs of each parent. She asserts that Father and his now-wife's household income is in excess of $217,000, which is four times the amount of her income, and that she continues to bear all of the costs related to C.K.'s education and extracurricular activities. She asserts that the visiting judge relied on hearsay evidence (i.e., two unauthenticated tuition checks signed by a trustee) to conclude that Mother's parents would pay for C.K.'s private-school education through twelfth grade through C.K.'s alleged trust fund, which – she argues – does not exist.

{¶19} In response, Father argues that, while the visiting judge did include a $4,605.12 childcare credit on the child support worksheet included in its October 23, 2019, judgment entry, it did not affect his adjusted child support obligation and, therefore, was harmless error. Regarding the visiting judge's reliance on Mother's familial resources, Father argues that the visiting judge was permitted to consider any relevant factor when calculating child support. He argues that the briefs and affidavits he submitted included information as to how C.K. and Mother enjoy a high standard of living, and that this factor is relevant to a child support calculation. He also argues that Mother's attempt to "cry poor" is disingenuous, and that C.K. enjoys a greater standard of living at Mother's house than his given the resources that flow directly to Mother through her family. Father further argues that Mother's assertion that he does not pay for the majority of C.K.'s expenses (e.g., additional school expenses and extracurricular expenses) is not true, and that the recent amended shared parenting plan does not require Mother to pay for all of C.K.'s private-school education.

**{¶20}** Having summarized the parties' arguments related to Mother's first three assignments of error, we now turn to this Court's standard of review and the relevant law. As this Court stated in *Kenney I:*

> "In general, 'a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion.'" * * * An abuse of discretion "connotes a decision that is unreasonable, arbitrary, or unconscionable." * * * "If the issue on appeal, however, 'is whether the trial court correctly applied the child support statute, this Court employs a de novo standard of review.'" * * * "In addition, 'an appellate court reviews the factual findings to support that award under a manifest-weight-of-the-evidence standard.'"

*Kenney I* at ¶ 26, quoting *Ferriot v. Noga*, 9th Dist. Summit No. 28136, 2016-Ohio-7949, ¶ 8. "[A]lthough the standard of review for the lower court's child support determination is abuse of discretion, challenges to factual determinations upon which the child support order is based must be reviewed using the 'some competent credible evidence' standard." *Bender v. Bender*, 9th Dist. Summit No. 20157, 2001 WL 808975, *2 (July 18, 2001). "This means that a determination of fact will be upheld on appeal if there is some competent, credible evidence to support the finding." *Id.*

**{¶21}** "If the parties' combined gross income exceeds $150,000, a court determines the obligor's child support obligation on a case-by-case basis considering the needs and the standard of living of the children who are the subject of the child support order and of the parents." *Mistysyn v. Lynch*, 9th Dist. Lorain No. 18CA011317, 2019-Ohio-903, ¶ 10, quoting *J.M. v. L.M.*, 9th Dist. Lorain No. 17CA011126, 2018-Ohio-3417, ¶ 13. "[T]he statutorily-defined level of support for a combined gross income of $150,000 represents 'the starting point' in the analysis when the parties' combined income exceeds $150,000." *Batcher v. Pierce*, 9th Dist. Summit No. 26785, 2013-Ohio-4677, ¶ 9, quoting *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 5. "A court may, in its discretion, award a greater level of support." *Id.*

{¶22} Regarding Mother's argument that the visiting judge failed to follow this Court's remand instructions, we disagree. The visiting judge specifically addressed this Court's remand instructions and considered the $150,000 income limit when analyzing Father's child support obligation. The visiting judge ultimately concluded that there was no basis to award child support above the $150,000 limit. As discussed below, the visiting judge did otherwise err in conducting that analysis, but its error was not based upon its failure to follow this Court's remand instructions.

{¶23} As previously noted, the visiting judge determined that, "[b]ecause of the high standard of living enjoyed by [Mother], her access to vast familial financial resources and [Father's] full financial support of [C.K.] during his 50% parenting time, [Mother] simply does not need any more than the minimum child support called for by R.C. 3119.04(B) in order to adequately provide for [C.K.'s] needs and standard of living[,]" and there is "simply no reason or evidentiary support to increase Child Support over the $150,000 limit." In support of its decision, the visiting judge cited the supposed fact that Mother's parents paid for C.K.'s private-school tuition through a trust fund, and that it was anticipated that Mother's parents would continue to fund C.K.'s education through twelfth grade through that trust fund. The visiting judge also cited the fact that Mother's family owns certain real-property assets, as well as a profitable company that has experienced significant financial gains.

{¶24} This Court is troubled with the visiting judge's reliance on Mother's apparent access to "vast familial financial resources" to support its conclusion that there is "simply no reason or evidentiary support to increase Child Support over the $150,000 limit." Mother argues that such access does not exist, and that the visiting judge improperly imputed her parents' standard of living on her. Father directs this Court to the briefs and affidavits submitted below, arguing that the record demonstrates that Mother and C.K. benefit from Mother's high standard of living.

{¶25} This Court's review of the record indicates that Father attached an affidavit to his briefing below wherein he attested to certain business and real-property assets that Mother's family purportedly owns. Notwithstanding, this Court cannot say that Father's affidavit provided competent, credible evidence to support the visiting judge's decision in this regard. Even if Mother's family does have significant assets, her apparent access to them is based upon speculation, not upon any affirmative evidence in the record. *See Ellis v. Treon*, 12th Dist. Clermont No. CA2014-03-021, 2014-Ohio-5010, ¶ 33 (acknowledging that speculation does not constitute competent, credible evidence); *Tarr v. Walter*, 7th Dist. Jefferson No. 01 JE 7, 2002-Ohio-3188, ¶ 24 (reversing a child support order that was based, in part, upon "erroneous assumptions"). This case is distinguishable from those wherein the record affirmatively demonstrates that a parent does, in fact, receive support from his or her family, and that the parent lives off of that support. *See, e.g.*, *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064-M, 2012-Ohio-2001, ¶ 29-31 (holding that the trial court did not abuse its discretion in considering the money the father received from his parents as part of his gross income for child support purposes when the father testified that his parents paid for all of his expenses, and the father's mother testified that she and her husband would continue to care for him as long as they were able to); *Tiktin v. Tiktin*, 8th Dist. Cuyahoga No. 72630, 1998 WL 229502, *2 (May 7, 1998) (finding that the trial court did not abuse its discretion when it considered money the father received from one of his parents as income for purposes of calculating the father's child support obligation when the father testified that he lives off the money he receives from that parent).

{¶26} We are also troubled with the visiting judge's conclusion that it is anticipated that Mother's parents will fund C.K.'s private-school education through twelfth grade through a trust fund, which Mother asserts does not exist. Even if Mother's parents paid for C.K.'s tuition in the

past, nothing in the record indicates that they will do so in the future. *See* former R.C. 3119.01(C)(7)(e) (providing that gross income for child support computation purposes does not include non-recurring income); *Kenney I*, 2017-Ohio-354, at ¶ 35-36 (addressing non-recurring income). The visiting judge's decision in this regard appears to have been based upon speculation and unsupported assumptions.

{¶27} In light of the foregoing, this Court cannot say that Mother's parents' assets and financial resources – without more – should have been considered for purposes of calculating Father's child support obligation. In this case, we conclude that doing so resulted in an abuse of discretion. *See Ferriot*, 2016-Ohio-7949, at ¶ 13-14 (vacating a child support award based, in part, on the fact that nothing in the record supported one of the trial court's factual findings). To the extent that Father attempts to argue that Mother forfeited any challenge to the evidence regarding her high standard of living by agreeing to brief the matter, we find his argument unpersuasive.

{¶28} Mother's first assignment of error regarding the visiting judge's alleged failure to follow this Court's remand instructions is overruled. Mother's second and third assignments of error are sustained on the basis that the visiting judge erred by relying on Mother's apparent access to "vast familial financial resources[,]" and the unsupported fact that it was anticipated that Mother's parents would pay for C.K.'s private-school education for purposes of calculating Father's child support obligation.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY AWARDING BOTH THE TAX DEPENDENCY TO EXEMPTIONS TO BOTH PARTIES, AND BY FAILING TO CONDUCT AN ANALYSIS TO DETERMINE WHICH PARENT WOULD RECEIVE THE M[O]ST NET SAVINGS AS [A] RESULT OF BEING GRANTED THE DEPENDENCY EXEMPTION.

ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED AS A MATTER OF LAW IN MODIFYING THE PARTIES' RESPECTIVE RESPONSIBILITIES FOR OUT-OF-POCKET MEDICAL EXPENSES INCURRED ON BEHALF OF THE MINOR CHILD.

{¶29}   In her fourth assignment of error, Mother argues that the visiting judge abused its discretion by not awarding her the annual dependent child tax exemption.  In her sixth assignment of error, Mother argues that the visiting judge erred by modifying the parties' respective responsibilities for out-of-pocket medical expenses because it did not determine that the modification was in C.K.'s best interest.  These arguments relate to and are premised upon (at least in part) the visiting judge's calculation of child support, which – as explained in this Court's analysis of Mother's second and third assignments of error – was erroneous.  Mother's fourth and sixth assignments of error are, therefore, premature at this time, and we decline to address them.

ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED IN DENYING APPELLANT['S] MOTION FOR SANCTIONS AND ATTORNEY FEES PURSUANT TO CIV.R. 11 AND R.C. 2323.51.

{¶30}   In her fifth assignment of error, Mother argues that the visiting judge erred by denying her motion for sanctions and attorney's fees against Father and his former attorney.  In response, Father asserts that Mother's notice of appeal related to the October 23, 2019, judgment entry only, not the June 26, 2019, judgment entry wherein the visiting judge dismissed her motion for sanctions and attorney's fees, and that the only judgment entry Mother attached to her docketing statement was the October 23, 2019, judgment entry.  He also asserts that his former attorney is not a party to this appeal, and that she was dismissed as a party in the underlying case in July 2019.  He, therefore, argues that Mother's assignment of error related to the denial of her

motion for sanctions and attorney's fees is not properly before this Court, and that this Court should overrule her fifth assignment of error on that basis.

{¶31} In her reply brief, Mother argues that any error in this regard was harmless since Father has responded to the merits of her argument in his appellate brief, and that the visiting judge's error was in the fact that it did not address the merits of her motion. She asserts that, once this issue is reversed and remanded, Father and his former attorney can argue the merits of the issue before the trial court.

{¶32} Appellate Rule 3(D) requires the notice of appeal to "designate the judgment, order or part thereof ap[p]ealed from[.]" "The purpose of such a notice is to apprise the opposite party of the taking of an appeal." *Capital Loan & Sav. Co. v. Biery*, 134 Ohio St. 333, 338 (1938). "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal." App.R. 3(A). Such actions are within the discretion of the appellate court. *Parra v. Continental Tire LLC*, 9th Dist. Summit No. 26315, 2012-Ohio-4138, ¶ 15, quoting *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320 (1995), syllabus ("When presented with other defects in the notice of appeal, a court of appeals is vested with discretion to determine whether sanctions, including dismissal, are warranted, and its decision will not be overturned absent an abuse of discretion."); *see Armbruster v. Hampton*, 9th Dist. Lorain No. 05CA008716, 2006-Ohio-4530, ¶ 16, citing *Nolan* at 322 ("In determining whether an appellate court abuses its discretion by dismissing an appeal on the basis of a timely, yet otherwise defective, notice of appeal, the high court considers whether the appellant's mistake was made in good faith, whether prejudice has accrued as a result, whether dismissal constitutes a

disproportionate sanction, whether the client is punished for the fault of his counsel, and whether the dismissal frustrates the overriding objective of deciding cases on their merits.").

{¶33} Here, Mother did not file a notice of appeal relative to the visiting judge's denial of her motion for sanctions and attorney's fees against Father and his former attorney, nor did she attach that judgment entry to her docketing statement. Consequently, Father's former attorney is not a party to this appeal and has not filed a responsive brief. Mother's fifth assignment of error, therefore, is not properly before this Court, and we overrule it on that basis. *See In re D.T.*, 9th Dist. Lorain No. 14CA010700, 2015-Ohio-5041, ¶ 10 (noting that an assignment of error relating to a non-party was not properly before the court).

ASSIGNMENT OF ERROR VII

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT *SUA SPONTE,* MODIFIED AN AGREED JUD[G]MENT ENTRY THAT ADOPTED AN AMENDED SHARED PARENTING PLAN AND PARENT COORDINATOR THAT WAS ORDERED BY THE COURT ON JULY 22, 2019, THREE MONTHS LATER WITHOUT A REQUEST FOR MODIFICATION OR FINDING SUCH MODIFICATION WAS IN THE CHILD'S BEST INTEREST.

{¶34} In her seventh assignment of error, Mother argues that the trial court erred by sua sponte modifying two of its prior orders regarding C.K.'s passport and international travel. She argues that, in its July 22, 2019, judgment entry, the visiting judge ordered a parent coordinator, and ordered the parties to discuss and reach an agreement regarding international travel with that parent coordinator. She also argues that the amended shared parenting plan, which the visiting judge adopted and journalized on July 22, 2019, ordered that C.K.'s passport shall be escrowed with the Medina County Clerk of Courts or agreed upon professional. She asserts that the visiting judge modified these prior orders by allowing Father to maintain possession of C.K.'s passport, and by appointing the guardian ad litem as the decision maker regarding international travel. She

argues that the trial court had no authority to sua sponte modify these orders, and that it did so without considering C.K.'s best interests.

{¶35} In response, Father argues that the amended shared parenting plan indicated that C.K.'s passport would be escrowed by a separate order, and that the October 23, 2019, judgment entry (and adopted in the April 21, 2020, judgment entry) did just that. Father also argues that the parent coordinator was ordered for last-resort situations when the parties could not agree on an issue and needed a quick resolution. He further argues that the parent coordinator is only in place for 24 months (i.e., until 2021), and that – when it expires – the July 22, 2019, October 23, 2019, and April 21, 2020, orders will remain in effect.

{¶36} The parties' amended shared parenting plan provided that C.K.'s passport:

> shall be escrowed with the Medina County Clerk of Courts or another agreed upon professional. The Medina County Clerk of Courts or a neutral individual agreed upon in writing by the parties. The passport shall be escrowed by separate order. The Medina County Clerks of Courts or a neutral individual agreed shall provide the passport to the requesting parent a minimum of 48 hours in advance of international travel. Said passport shall be returned to Medina County Clerk of Courts or agreed upon passport holder within 48 hours of the completion of the scheduled travel.

It further provided that the issues of international travel and the parent coordinator would be addressed by separate entries.

{¶37} On July 22, 2019, the visiting judge approved and adopted the amended shared parenting plan, and indicated that the issues of international travel and C.K.'s passport would be taken under advisement. That same day, the visiting judge appointed a parent coordinator. In its judgment entry appointing a parent coordinator, the visiting judge indicated that the parent coordinator would "[i]ssue a written decision[], when attempts to assist the parties to reach an agreement have failed, on * * *[C.K.'s] travel and passport issues." The visiting judge then addressed the passport and international travel issues again in its October 23, 2019, judgment entry,

concluding that Father would maintain possession of C.K.'s passport unless Mother needed it to travel with C.K., and ordering that the guardian ad litem would attempt to resolve any issues regarding C.K.'s international travel.

{¶38} In her motion for clarification and reconsideration of the visiting judge's October 23, 2019, judgment entry, Mother requested that the visiting judge reconsider its decision regarding C.K.'s passport and international travel, arguing that the visiting judge had already appointed a parent coordinator, and requesting that the court maintain C.K.'s passport. In its April 21, 2020, judgment entry, the visiting judge denied Mother's request, ordering that the October 23, 2019, judgment entry addressing these issues remained in effect.

{¶39} As Father argues, the amended shared parenting plan indicated that "[t]he passport shall be escrowed by separate order." That same section, however, specifically indicated that the passport would be escrowed with the Medina County Clerk of Courts or "a neutral individual agreed upon in writing by the parties." In light of the parties' amended shared parenting plan indicating that C.K.'s passport would be escrowed with the Medina County Clerk of Courts or other agreed upon professional, as well as the visiting judge's appointment of the parent coordinator to assist the parties in resolving any issues regarding C.K.'s passport and international travel, we conclude that the visiting judge erred by subsequently sua sponte ordering that Father would maintain possession of C.K.'s passport, and further ordering that the guardian ad litem would attempt to resolve any issues regarding C.K.'s international travel. Mother's seventh assignment of error is sustained.

III.

{¶40} Mother's first and fifth assignments of error are overruled. Mother's second, third, and seventh assignments of error are sustained. We decline to address Mother's fourth and sixth

assignments of error on the basis that they are premature. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this decision.

Judgment affirmed in part,<br>
reversed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JENNIFER HENSAL
FOR THE COURT

SUTTON, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶41} I concur with much of the majority's analysis. However, in addition, I would sustain Ms. Carroll's first assignment of error.

{¶42} In this Court's most recent prior opinion involving these parties, *Kenney v. Carroll*, 9th Dist. Medina No. 17CA0042-M, 2018-Ohio-1882, this Court ordered the 2017 nunc pro tunc entry to be vacated and instructed the trial court "to calculate child support in accordance with this Court's prior decision in *Kenney*[ *v. Carroll*, 9th Dist. Medina Nos. 13CA0090-M, 15CA0102-M], 2017-Ohio-354." *Kenney*, 2018-Ohio-1882, at ¶ 13. Here, the trial court did not comply with that instruction. Instead, it reviewed the prior judge's calculations from the 2017 entry and adopted them. In so doing, it recited language from that 2017 entry. That quoted language repeatedly references the parties' agreement to cap the child support obligation for incomes greater than $150,000 at the $150,000 limit, despite this Court's instruction in the 2017 appeal for the trial court "to recalculate child support for the years at issue without utilization of the $150,000 income limitation." *Kenney*, 2017-Ohio-354, at ¶ 36. In addition, the trial court concluded that this Court made "no comment about the propriety of [the prior trial judge's] calculation and application of R.C. 3119.04(B)." While it is true that this Court did not review the merits of the prior trial judge's calculations, that is because this Court ordered the entire 2017 entry to be vacated. *Kenney*, 2018-Ohio-1882, at ¶ 13. Nothing in the 2018 opinion indicates that the trial court should merely adopt the reasoning of the prior trial judge in the 2017 entry, which was ordered vacated. On the contrary, the plain language of the 2018 opinion states

that the trial court must "calculate child support" in accordance with the appeal decided in 2017. *Id.* Because Ms. Carroll demonstrated that the trial court failed to comply with this Court's remand instructions, I would sustain her first assignment of error.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

PETER S. KIRNER, Attorney at Law, for Appellee.